**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 27, 2022*
Decided May 4, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-3315

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 4:20-CR-40058-JPG-1 |
| ANTHONY TERRELL MILLER, *Defendant-Appellant*. | J. Phil Gilbert, *Judge*. |

**ORDER**

Anthony Miller pleaded guilty to conspiring to distribute and possessing with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a), (b)(1)(A)(viii), 846, and was sentenced to 360 months' imprisonment. He appeals the sentence, arguing that the

---

* We granted the appellant's unopposed motion to waive oral argument. Thus, the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(f).

district judge did not adequately consider his arguments in mitigation. We affirm the judgment.

A few months after being released from prison in 2018, Miller began distributing pound-quantities of methamphetamine around Saline County, Illinois. Federal, state, and local law enforcement learned from confidential informants that Miller was one of two main local suppliers of drugs. Following several controlled buys, law enforcement authorities conducted a search of Miller's home, where they found almost three pounds of methamphetamine, a handgun with an obliterated serial number (which Miller obtained by trading methamphetamine), scales, ledgers, and thousands of dollars in cash.

In a post-arrest interview, Miller admitted that he began selling methamphetamine shortly after serving a nine-year prison sentence. He explained that he first distributed ounces of methamphetamine but quickly escalated to distributing pound-quantities. He estimated that he sold between 27 and 68 kilograms of methamphetamine in the span of nine months.

In mid-2021, Miller pleaded guilty to conspiring to distribute methamphetamine and possessing methamphetamine with intent to distribute. 21 U.S.C. §§ 841(a), (b)(1)(A)(viii), 846. In advance of Miller's sentencing hearing, a probation officer calculated a guidelines range of 360 months to life imprisonment (based on an offense level of 37 and a criminal-history score of 14).

Miller sought a below-guidelines sentence of 180 months by highlighting several mitigating factors. He pointed, for instance, to his difficult upbringing affected by poverty and addiction, including his mother's and grandmother's history of substance abuse, his physically abusive stepfather, his own alcohol and substance abuse from an early age, and the absence of any serious violent crimes from his record. He also argued that 360 months' imprisonment was longer than necessary because of his advancing age, 45, and he expressed remorse for the harm he caused as well as a desire to reform for the sake of his family.

The judge adopted the presentence report and sentenced Miller to 360 months. The court acknowledged Miller's "rough childhood" and his parents' struggles with alcoholism or drug abuse but emphasized Miller's role as "the top of the food chain of this conspiracy." Applying the factors under 18 U.S.C. § 3553(a), the judge alluded to

Miller's "horrible" criminal history and his inability to be deterred from further criminal conduct.

Miller's brief is sparse, and he generally argues that the judge did not adequately consider a host of mitigating factors. The mitigating factors that Miller identifies are "(1) his age, (2) his difficult childhood plagued by poverty, (3) his childhood abuse, (4) his addiction, (5) his small children at home, (6) his commitment to be a family man, and (7) his remorse."

The judge adequately addressed the most relevant factors. Regarding Miller's difficult upbringing, the judge acknowledged that Miller's childhood was "rough" and that his parents "struggled with alcohol or drug abuse" but concluded that Miller's pursuit of criminal activity was a "conscious choice." In the judge's view, Miller decided that he wanted to "get rich quick," and therefore "started running the streets at an early age" while eschewing "legitimate jobs" to "peddle the poison," and eventually ascended to "the top of the food chain" of a drug-distribution conspiracy. As for Miller's addiction, the judge did not consider this mitigating because Miller had a history of "hanging out in the drug culture." Moreover, the factors that the judge did not address—Miller's age, family aspirations, and remorse—are either stock arguments that require no mention, *see, e.g.*, *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012) (family and remorse), or factually unsupported. *See id*. at 915 (age).

Further, the 360-month sentence is substantively reasonable. A within-guidelines sentence is presumed reasonable, and Miller has not rebutted this presumption. *See United States v. Ambriz-Villa*, 28 F.4th 786, 791 (7th Cir. 2022). The judge appropriately applied the § 3553(a) factors, emphasizing Miller's history and characteristics ("[Y]ou have a horrible criminal history … some people, for whatever reason, cannot or will not conform to a law-abiding life, and, unfortunately, I think you're one of those people"), the seriousness of his offense (described by the judge as "pushing the poison"), Miller's lack of respect for the law ("[Y]ou have not complied with any type of supervision or probation or parole that you have been on before"), and the need for adequate deterrence and protection of the public ("[P]revious sentences haven't deterred you from any criminal conduct because you get right back into business when you get back out"). *See United States v. Smith*, 721 F.3d 904, 908 (7th Cir. 2013).

The judgment of the district court is therefore AFFIRMED.